**FILED**

**NOV 29 2002**



# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA



**SYED K. RAFI, PHD**
4401-A, Connecticut Avenue, B # 206
Washington, DC 20008-2322
1-203 526 6649 (CELL PHONE #)

**COMPLAINANT**

v

Honorable, **TOMMY G. THOMPSON**
**SECRETARY**
**U.S. DEPARTMENT OF HEALTH &**
**HUMAN SERVICES**
C/O Dennis P. Williams, (A) Assistant
Secretary for Management & Budget
Hubert H. Humphrey Building, Room 514G
200 Independence Avenue, SW
Washington, DC 20201

**AGENCY**

EEOC NO.
120-A0-3795X

AGENCY NO.
NHGRI EEO- 980003

CASE NUMBER 1:02CV02356
JUDGE: Emmet G. Sullivan
DECK TYPE: Employment Discrimination
DATE STAMP: 11/29/2002



# COMPLAINT

Plaintiff, complaining of the defendant, avers:

## JURISDICTION AND VENUE

1. Plaintiff invoked this court's jurisdiction under 29 C.F.R.§1614.408, pursuant to 42 U.S.C. 2000e-5 and 28 U.S.C. Section 1981; Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; and the Rehabilitation Act.

2. The unlawful employment practices alleged below were committed by the U.S. Department of Health and Human Services Agency, Washington, DC. in collusion with The George Washington University Medical Center, Washington, DC. **(Please refer here the designated related civil case at this Court: Syed K. Rafi, PHD, vs George Washington University; Civil Case Docket # 95-0284, Feb. 10, 1995; and also Dr. Rafi's complaint (binder) dated August 10, 1997, to Honorable Judge, Thomas Penfield Jackson and his ruling dated September 8, 1997).**

1

## PROCEDURAL HISTORY

The Equal Employment Opportunity Commission pursuant to Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended, completed the procedural requirements provided in the implementing regulations at 29 C.F.R. §1614.101 et seq (ref. Agency's Right to Sue letter, dated Aug.28, 2002 (enclosure)).

### I. INTRODUCTION

On or about March 9, 1998, Dr. Rafi sought out EEO counseling as a result of what he believed was employment discrimination perpetrated against him by the agency, Department of Health and Human Services ("agency"), on the bases of race (Asian), color (brown), national origin (East Indian), religion (Islam), sex (male) and reprisal (ROI, Binder 1, Tab 1). Dr. Rafi contended that the agency had discriminated against him on these unlawful bases when it failed to select him on twelve occasions (jobs) between 1993 and 1998. Some background facts are required in order to present Dr. Rafi's dispute with the agency in its proper perspective.

On October 1, 1991 the Armed Forces Institute of Pathology, Department of Defense provided Dr. Rafi with a notice of separation and effectively terminated him from his employment. (*See* Memorandum in Support of Petitioner's Appeal (Binder 2, Attachment 3). At that time, the federal government sent a memorandum to all federal agencies instructing those agencies to absorb "riffed" federal employees on a priority basis (Binder 2, Exhibit 10'). In 1992, Dr. Rafi applied to the Genetics Division at The George Washington University Medical Center. (hereinafter "GWUMC"). Dr. Rafi filed a discrimination case against GWUMC, when GWUMC denied Dr. Rafi a position to direct its cytogenetics laboratory.

On July 17, 1992, Dr. Rafi filed a charge of discrimination against GWUMC with the Equal Employment Opportunity Commission (hereinafter "EEOC" or "Commission"). On February 10, 1995, Dr. Rafi filed a timely complaint with the United States District Court in the District of Columbia (see "the designated related Civil Case at this Court": Syed K. Rafi, PHD VS George Washington University, Docket # 95-1028, Feb. 10, 1995). On August 14, 1996, Dr. Rafi made a motion to voluntarily withdraw from that case since NIH / NHGRI conveyed to him through an intermediary, that his voluntary withdrawal of the pending GW case would enable NIH / NHGRI to positively consider his candidacies. During the closed door settlement negotiations at the US District Court, as

2

per Judge Jackson's advise, Ms. Mary Qualiana, counsel for GWUMC, also affirmed Dr. Rafi that his withdrawal from that case would "enable NHGRI to consider [his] candidacies" (Binder 2, Attachment 3, Exhibits 4 &10). Shortly after Dr. Rafi voluntarily withdrew his case with GWUMC, he received a warm reception from Dr. Biesecker at NIH's Weekly Wednesday Post Clinic Conference. He also received two positive and encouraging letters from Dr. Jeffrey M. Trent and positive e-mail from Dr.Leslie Biesecker (Binder 2, Attachment 3, Exhibit 5).

After waiting for approximately one year, on June 24, 1997, Dr. Rafi again appeared before the Honorable Thomas Penfield Jackson. Dr. Rafi informed Judge Jackson that GWUMC had failed to meet its settlement understanding (see Dr. Rafi's memorandum in form of a binder, to Judge Jackson, dated August 30, 1997 and received at the Court on September 24, 1997, and on September 8, 1997, "Ordered it to be filed as a part of the record in that case by the Judge"). At that time, counsel for GWUMC again assured Dr. Rafi that GWUMC would assist Dr. Rafi to secure a position with NIH (Binder 2, Attachment 3, Exhibit 6). Judge Jackson ordered that Dr. Rafi's case against GWUMC was dismissed (Binder 2, Attachment 3, Exhibit 7). After the final dismissal of Dr. Rafi's case against GWUMC on September 8, 1997, (Binder 2, Attachment 3, Exhibit 7), NHGRI no longer provided Dr. Rafi with encouraging statements. Instead, NHGRI provided negative letters beginning on January 20, 1998 (Binder 2, Attachment 3, Exhibit 8). As stated above, on March 9, 1998, Dr. Rafi contacted the Office of Equal Opportunity (hereinafter "OEO") concerning discrimination and retaliation, after affirmative misconduct of defendant NHGRI lulled Dr. Rafi into inaction. In addition, on March 22, 1998, Dr. Rafi, through his attorney sent a plea letter to Ms. Qualiana, the attorney representing the GW University, asking her to live up to spirit of the agreement (Binder 2, Attachment 3, Exhibit 10). Ms. Qualiana failed to respond to the plea letter.

However, at the close of informal counseling at the NIH's OEO, Dr.Rafi timely filed a formal complaint for employment discrimination against the agency on or about May 22, 1998 (Report of Investigation, Binder 1, Tab 5).

On August 21, 1998, the agency informed Dr. Rafi that it had accepted two of his claims (Allegations 1 and 2) for the purpose of conducting a formal investigation (ROI, Binder 1, Tab 7). It also informed Dr. Rafi that

it was dismissing the remainder of his claims (Allegations 3 through 12) on the theory that these claims were untimely (ROI, Binder 1, Tab 7).

On October 13, 1998, Dr. Rafi, through the undersigned, filed an appeal of the agency's dismissal of Allegations 3 through 12 with the Commission's Office of Federal Operations (Binder 2, Attachment 3, with Exhibits 1 through 10).

Dr. Rafi subsequently received notice from the agency that it had completed its informal investigation of his Allegations 1 and 2. Dr. Rafi timely filed the requisite notice requesting a hearing before an administrative judge of the Commission as to Allegations 1 and 2. Because Dr. Rafi has properly requested a hearing on his Allegations 1 and 2, the agency's dismissal of his Allegations 3 through 12 is reviewable by the Commission, pursuant to 29 C.F.R. § 1614.107(b).

As to Dr. Rafi's Allegations 1 and 2, Dr. Rafi propounded written discovery upon the agency, but the agency did not respond. The parties have exchanged preliminary witness lists.

On March 8, 2002, the Commission issued a Notice of Proposed Decision without a Hearing as to Dr. Rafi's Allegations 1 and 2, which sets forth proposed findings of fact and invites the parties to show "how there is a genuine issue as to credibility, and/or if there is a genuine issue as to the material facts in this case." On March 13, 2002, Dr. Rafi requested an additional fifteen (15) days in which to file his response. The Commission subsequently granted his request.

On or about March 25, 2002, the agency filed a memorandum in response to the Commission's notice of proposed decision without a hearing as to Dr. Rafi's Allegations 1 and 2. In essence, the agency's arguments are two-fold: 1) that there exists no genuine issues of disputed material facts; and 2) that the Commission does not have jurisdiction to decide in Dr. Rafi's favor because he was not an "employee" or "applicant for employment,"

as the agency characterizes those terms (Agency's memorandum at p. 3). For the reasons stated with particularity below, the agency is wrong on both fronts.

The agency did not, however, rebut the reasons previously set forth in Dr. Rafi's October 13, 1998 appeal brief, and as set forth below, which address the agency's improper refusal to process Dr. Rafi's Allegations 3 through 12 was improper. Dr. Rafi requested that the Commission remand Allegations 3 through 12 to the agency, ordering it to commence a formal investigation thereof was not granted (EEOC decision dated July 17, 2002, which was also adopted by the Department of Health & Human Services, on Aug. 28, 2002 (see Attached) and this final decision by the agency was received by Dr. Rafi, through his former attorney, on 7th September, 2002, via US Postal Service).

The Agency's final decision also contained authorization to file a civil action under Title VII or the Rehabilitation Act. Within ninety (90) calendar days of the date of his receipt of the final decision.

## *II. STANDARD OF REVIEW*

### A. *Motion to Dismiss*

*In considering a motion to dismiss, "a complaint should <u>not</u> be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Martin Marietta Corp. v. International Telecommunications Satellite Org.</u>, 978 F.2d 140, 142 (4th Cir. 1992) quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957) (emphasis added). When making a determination as to whether there are facts supporting the claim, the claims must be construed in a light most favorable to the non-moving party and its allegations taken as true. <u>Martin Marietta Corp.</u>, 978 F.2d at 140 citing <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421-22 (1969). While the parties may produce affidavits and other materials in support or opposition to the motion to dismiss, if the court considers such extrinsic evidence, the motion must be converted into a request for summary judgment under Fed. R. Civ. P. 56. <u>Country Club Estates, L.L.C. v. Town of Loma Linda</u>, 213 F.3d 1001, 1005 (8th Cir. 2000)*

### B. *Motion for Summary Judgment*

As summary judgment is a most drastic measure, the law is settled that it should be granted <u>only</u> when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The court must view all evidence in the light most favorable to the non-movant, and draw all justifiable inferences in his favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252, 106 S. Ct. 2505 (1986).

Credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions. <u>Anderson</u>, 477 U.S. at 249, 106 S. Ct. at 2510-11. The summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues. <u>Sarsha v. Sears, Roebuck & Co.</u>, 3 F.3d 1035 (7th Cir. 1993). Moreover, because discriminatory intent and proof of disparate treatment are difficult to establish, courts must view summary judgment with special caution and therefore must be particularly careful to view all of the evidence in the light most favorable to the plaintiff. <u>Ross v. Runyon</u>, 859 F. Supp. 15, 21-22 (D.D.C. 1994). If a reasonable fact finder could infer discrimination based on the evidence submitted, then summary judgment is inappropriate. <u>Hayes v. Shalala</u>, 902 F. Supp. 259, 264 (D.D.C. 1995). When the validity of a complaint turns on questions of an employer's motive and intent, a court must be especially cautious in granting summary judgment. <u>Morrison v. Nissan Co., Ltd.</u>, 601 F.2d 139, 141 (4th Cir. 1979).

## II. ISSUES

The Commission notes that the issues for determination are whether or not the agency discriminated against Dr. Rafi on the bases of race (Asian), color (brown), national origin (East Indian), religion (Islam), sex (male) and reprisal when the agency:

1. Failed to hire Dr. Rafi to work as a volunteer scientist in the agency's Laboratory for Genetic Disease Research on January 20, 1998; and

2. Failed to hire Dr. Rafi to work as a volunteer scientist in the agency's Laboratory for Cancer Genetics Disease on January 23, 1998.

The Commission proposes seventeen separate findings of fact in its notice of proposed decision without a hearing, which, obvious reasons, the agency did not contest. Dr. Rafi does not dispute the following proposed findings that:

> 1. Dr. Rafi's race Asian-Pacific; color is brown; national origin is East India; sex is male; and religion is Islam.
>
> 2. Dr. Rafi has engaged in prior activity, which included filing a civil action in the United States District Court for the District of Columbia against George Washington University Medical Center in 1991.
>
> 3. Dr. Rafi was not hired by the agency's NHGRI branch, despite his numerous applications.
>
> 4. Dr. Trent is Caucasian, white, not East India, male and is the Scientific Director of NHGRI.
>
> 5. Dr. Biesecker is Caucasian, not brown, not East India, male and is a Medical Officer, Investigator for the Agency.
>
> 6. Dr. Rafi's letters concerning volunteer positions with the agency went directly to Drs. Trent and Biesecker.
>
> 7. Dr. Biesecker recalls Dr. Rafi's letters concerning volunteer positions with the agency.

For the reasons set forth in the ROI, his appeal memorandum and herein, however, Dr. Rafi respectfully suggests that the Commission's remaining proposed findings of fact are in dispute and may not be used to support a decision without a hearing.

## IV. ARGUMENT

In its memorandum in response to the Commission's notice of proposed decision without a hearing, the agency contends that there exists no genuine issues of disputed material facts and that **"the Commission does not have jurisdiction under EEO regulations"** to decide in Dr. Rafi's favor because he was not an "employee" or "applicant for employment." (Agency's memorandum at p. 3). The agency's jurisdictional argument ignores the economic realities of the "volunteer" positions for which Dr. Rafi applied and, at best, relies on disputed issues of material fact. The agency has previously argued that Dr. Rafi's Allegations 3 through 12 were untimely filed. This argument fails to account for the agency's affirmative misdeeds toward Dr. Rafi and "ignores the continuing violation doctrine".

### A. VOLUNTEER STATUS AND ALLEGATIONS 1 AND 2

In its memorandum, the agency, citing 29 C.F.R. § 1614.103(c), and several EEOC opinions, proffers that a complainant, like Dr. Rafi, must be an "employee" or "applicant for employment" at the agency where the complaint is filed "in order to bring an action at the EEOC." Agency's memorandum at p. 3. Presumably underlying the agency's argument is the fact that Dr. Rafi would not have been paid "wages" as a "volunteer" of the agency. What the agency has failed to address, however, is that "wages" is not, in and of itself, determinative of this issue, under the line of cases, including Haavistola v. Community Fire Co., 6 F.3d 211 (4th Cir. 1993), which is binding on the Commission.

In Haavistola, the Court of Appeals for the Fourth Circuit, in overruling the trial court's decision, addressed the issue of whether a female volunteer member of a fire company was an employee for purposes of Title VII of the Civil Rights Act of 1964. Finding that the female "volunteer" was in fact an employee under Title VII, the Court noted that direct compensation was only one of a number of factors to be considered in determining whether an individual was an "employee" under Federal employment discrimination statutes. Haavistola, 6 F.3d at 220-221. Significant for the Court were the non-monetary benefits bestowed upon a "volunteer" member of the fire company, including the fact that "volunteer" status as a fire fighter was "the most practical approach" for an individual to accumulate the first-hand experience needed in order to qualify for certification as an emergency medical technician-paramedic under Maryland law. Id. at 221 n.3. In closing, the Court noted that the "district court's decision that benefits received by Fire Company members are not sufficient to make them employees under Title VII involves the resolution of disputed material facts . . ." and "cannot be found as a matter of law." Id. at 221.

Four of Dr. Rafi's twelve allegations involve the agency's failure to hire him to work as a volunteer scientist for the agency (Allegations 1 through 4). The agency's argument to dismiss Allegations 1 and 2 because the positions Dr. Rafi applied for were "volunteer" ignores the substantial non-monetary benefits those positions would have bestowed upon him, as a research scientist. Dr. Rafi is expected to testify that volunteer positions

8

such as the ones at issue are the primary method by which a research scientist, like himself, is able to obtain full-time, paid positions in the Federal service.

Through the "volunteer" positions for which he applied, Dr. Rafi is further expected to testify that he would have been immersed on a regular basis in the latest technological advances in his particular scientific specialty, for which there are very few jobs as a whole. Conversely, Dr. Rafi's scientific research would have received wide exposure to agency officials, making it very likely that he would have been offered a paid position within the agency. The importance of such "volunteer" positions in the highly specialized area of research science, where the primary source of employment is the Federal government, cannot be overstated. At a minimum, the agency's jurisdictional premise relies on disputed issues of fact, thereby necessitating testimony from Dr. Rafi, as well as relevant agency officials and precluding a decision without a hearing.

## B.  EQUITABLE TOLLING AND CONTINUING VIOLATION DOCTRINE

A significant by-product of limiting the scope of review to only Allegations 1 and 2 of Dr. Rafi's twelve claims against the agency is that it unfairly skews the inquiry into the larger pattern of unlawful treatment perpetrated by the agency against Dr. Rafi from 1993 into 1998, which wrongly deprived him of employment for which he was otherwise qualified. In fact, the agency has never, at any point in the EEO process, sufficiently addressed Dr. Rafi's contention that the agency has discriminated against him on the bases of race, color, national origin and religion, among other things, and that, by failing to consider him for any one of the twelve or more positions for which he had applied, the agency has unlawfully retaliated against him with respect to its involvement in the settlement and/or dismissal of his law suit against the George Washington University Medical Center. To the extent that the agency has tried to do so (*see* ROI, Binder 2, Tab 7 / Exhibit 7), its arguments of untimeliness are simply misplaced or rely on disputed issues of fact, in either case precluding a decision by the Commission without a hearing as to Allegations 3 through 12.

Dr. Rafi's facts are these. He engaged in protected EEO activity as far back as 1992 against the George Washington University Medical Center ("GWUMC") The GWUMC maintained very close working and financial

relationships with the agency beginning before 1992 and continuing thereafter. Dr. Rafi furthered his EEO activity by filing a lawsuit in Federal district court against GWUMC in 1995. Dr. Rafi was enticed to dismiss his lawsuit several years later when he was told that the agency would look favorably upon his applications for employment.

Dr. Rafi continued to apply for numerous jobs with the agency, both paid and volunteer, all within his fields of scientific expertise. The agency's officials, including Dr. Biesecker, initially gave Dr. Rafi some reasons to believe that it would make good on the representations that were made during his litigation against GWUMC. Then the agency refused to respond to Dr. Rafi's oral and written inquiries. Importantly, the agency has not produced one shred of evidence to indicate that Dr. Rafi ever received notice from the agency, whether formal or informal, that he had not been selected for any of the positions he applied for with the agency.

The agency's argument thus fails under the "continuing violation" doctrine that has been applied by the courts in situations such as Dr. Rafi's.

On August 21, 1998, the agency notified Dr. Rafi that it was dismissing his Allegations 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, alleging that he had failed to file a timely complaint. To the contrary, however, on March 9, 1998, Dr. Rafi provided the OEO with statements regarding the affirmative misconduct of both GWUMC and NHGRI. Dr. Rafi suspected, but did not become aware of, this misconduct until he received letters dated January 20, 1998 and January 23, 1998 from Dr. Biesecker and Dr. Trent, respectively. By reviewing his letters to NHGRI prior to January 20, 1998, it is apparent that Dr. Rafi believed that he would obtain a position with NHGRI (Binder 2, Attachment 3, Exhibit 9).

For the agency's part, it has acknowledged that "[t]he record shows no official notification dates of when the Complainant was notified of his nonselection for the NHGRI positions regarding allegations 8, 9, 10, 11 and 12[,]" noting that, in the absence of official notice of nonselection, the personnel decision does not become effective until such time as "fairness and logic" should have alerted the average layperson to act to protect his rights, or when he should have perceived that discrimination was occurring" (ROI, Binder 2, Tab 7, p. 2 n.1).

10

Case 1:02-cv-02356-JR   Document 1   Filed 11/29/02   Page 11 of 19

Thus, Dr. Rafi filed a timely complaint with regard to all of Dr. Rafi's allegations in accordance with 29 C.F.R. §§ 16514.105 (a)(1) and 16114.107(b), when he became aware of NHGRI's misconduct in late January 1998.

### 1. EQUITABLE TOLLING

In 1982, the Supreme Court made clear with regard to EEOC filings that time periods are not to be characterized as jurisdictional, but rather as a "requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airways, 455 U.S. 385, 393, 102 S. Ct. 1227, 71 L. Ed. 2d 234, 28 FEP 1, reh'g denied, 456 U.S. 940, 102 S. Ct. 2001 (1982). Equitable tolling is available when there is deception or affirmative misconduct by an employer resulting in the employee missing the deadline for filing a charge with the EEOC. Villasenor v. Lockheed Aircraft, Corp., 640 F.2d 207 (9th Cir. 1981); Wilkerson v. Siegfried Insurance Agency, 621 F.2d 1042 (10th Cir. 1980); Leake v. University of Cincinnati, 605 F.2d 255 (6th Cir. 1979); Shockley v. Vermont State Colleges, 38 FEP 1523 (D. Vt. 1984).

Equitable tolling has been allowed when a plaintiff's attempts to negotiate with an employer were prompted by express statements by the employer. Leake, 605 F.2d at 258. In Leake, the University of Cincinnati's counsel assured plaintiff it would investigate plaintiff's complaints of discrimination. Id. During that "investigation" period, plaintiff missed the filing deadline with the EEOC. Id. The Sixth Circuit held that equitable tolling of the filing period was appropriate in view of plaintiff's reliance on the University's express statements. In the case at bar, counsel for GWUMC and various personnel at NHGRI informed Dr. Rafi that he would be hired at NHGRI in the near future. These constant assurances lulled Dr. Rafi into inaction until the deadline for filing with the EEOC passed.

The courts have also accepted equitable tolling when employees are led to believe that an employer is trying to place the employee in another job. Cocke v. Merrill Lynch & Co., 817 F.2d 1559, 43 FEP 1724 (11th Cir. 1987); see also, Pearson v. Macon-Bibb County Hosp. Auth., 952 F.2d 1274, 57 FEP 1518 (11th Cir. 1992) (holding that equitable tolling was applicable when an employer invited a worker to transfer as an alternative to termination). In Cocke, the court stated that "[e]quitable modification suspends a limitations period 'until the facts

which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'" Cocke, 817 F.2d at 1561 (quoting Reeb v. Economic Opportunity Atlanta, Inc., 516 F.2d 924, 930 (5th Cir. 1975)). Applying this principle, the court held that while an employer is actively trying to find a position within a company for an employee, the filing period for the employee is equitably tolled "until such time as it is or should be apparent to an employee with a reasonably prudent regard for his rights that the employer has ceased to actively pursue such a position." Cocke, 817 F.2d at 1561; see Brown v. Lankenau, 1996 WL 257353 (E.D. Pa. 1996) (holding defendant actively misled plaintiff to wait until a job opened by an approximate date, and thus, defendant's actions equitably tolled the limitations period until at least that date). The court in Cocke, observed that it is too much for the law to expect an employee to sue his employer for discrimination at the same time that he is led to believe that the employer is trying to place him in another job. Id. at 1561-1562.

Here, plaintiff reasonably believed that NHGRI would provide him with a job. Plaintiff based this belief on both written and oral representations made by representatives of NHGRI and GWUMC (Binder 2, Attachment 3, Exhibits 5, 6, and 10). Plaintiff was also told that NHGRI could not hire him while he pursued litigation against GWUMC. When litigation ended with GWUMC on June 24, 1997, plaintiff could not be certain that he would not be able to obtain a job with NHGRI until he received letters dated January 20, 1998 and January 23, 1998 from representatives of NHGRI. These letters, which Dr. Rafi received in late January of 1998, declare that NHGRI would not offer Dr. Rafi even an unpaid volunteer position with NHGRI. Therefore, Dr. Rafi filed a timely complaint on March 9, 1998, and respectfully requests reinstatement of allegations 3,4,5,6,7,8,9,10,11 and 12.

### 2. CONTINUING VIOLATION DOCTRINE

Moreover, under circumstances such as Dr. Rafi's, many Courts have recognized that, under the continuing violation doctrine, a complainant may include acts of harassment that occurred prior to the limitations period, where such acts are a part of a pattern of harassment that continues into the limitation period. Sharafeldin v. Maryland Dept. of Public Safety and Correctional Servs., 94 F. Supp.2d 680 (D. Md. 2000); Redding v. Anne Arundel County, 996 F. Supp. 488 (D. Md. 1998); Jensvold v. Shalala, 829 F. Supp. 131 (D. Md. 1993); Jacobs v. University of Wisconsin Hosp. & Clinics Auth., 2001 WL 674618 (7th Cir. 2001); Filipovic v. K & R Exp. Sys.,

Inc., 176 F.3d 390, 396 (7th Cir. 1999); Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 344 (7th Cir. 1996). Because Dr. Rafi has alleged a continuing pattern of harassment against the agency both before and during the limitations period, the agency's argument of untimeliness must be discounted.

Continuing violation theory has been routinely applied by numerous courts to bring into the fold what would otherwise be untimely claims, when it appears from the facts that the untimely claims are related to a timely allegation by a series of separate but related acts, which amount to a continuing violation. McCorkle v. Veda, Inc., 155 F.3d 560 (4th Cir. 1998), citing Beall v. Abbott Labs., 130 F.3d 614, 620 (4th Cir. 1997); Sloane v. Shalala, 166 F.3d 334 (4th Cir. 1998), citing DeNovellis v. Shalala, 124 F.3d 298, 307 (1st Cir. 1997) (finding continuing violation where violation is systemic or serial); Malhotra v. Cotter & Co., 885 F.2d 1305, 1310 (7th Cir. 1989) (finding a continuing violation whenever the plaintiff had no reason to believe he was a victim of discrimination until series of adverse actions establish a visible pattern of discriminatory mistreatment); Berry v. Board of Supervisors, 715 F.2d 971, 981 (5th Cir. 1983) (finding continuing violation when three-prong test involving type of conduct, frequency of alleged acts and degree of permanence of acts is satisfied); Seward v. Harford County, Md., 2001 WL 283090 (D. Md.) (adopting analysis of Berry v. Board of Supervisors as consistent with Fourth Circuit principles); Sharafeldin v. Maryland Dept. of Public Safety and Correctional Servs., 94 F. Supp.2d 680 (D. Md. 2000); Redding v. Anne Arundel County, 996 F. Supp. 488 (D. Md. 1998); and Jensvold v. Shalala, 829 F. Supp. 131 (D. Md. 1993).

According to the United States District Court for the District of Maryland, application of continuing violation theory is appropriate where there is either an ongoing pattern or practice of discrimination <u>or a series of related acts emanating from the same discriminatory animus</u>. Sharafeldin, 94 F. Supp.2d at 685, *quoting*, Redding, 996 F. Supp. at 490 (emphasis added); Derrickson v. Circuit City Stores, 84 F. Supp.2d 679, 687 (D. Md. 2000), *citing*, Davis v. Richmond, Fredericksburg & Potomac R.R. Co., 803 F.2d 1322, 1326 (4th Cir. 1986). To prevail on a "serial" violation theory, one or more of the series of discriminatory acts must have occurred during the limitations period. Sharafeldin, 94 F. Supp.2d at 685.

In Sharafeldin, 94 F. Supp.2d at 683, the plaintiff, a black Muslim of Sudanese origin, was employed by the defendant, a Maryland State agency, as an Islamic chaplain at the Hagerstown correctional facility. Between 1993 and 1998, the plaintiff filed at least five separate charges of discrimination against the defendant, alleging a continuing pattern of discrimination in employment on the bases of race, sex, religion and national origin.

The Court (Harvey, J.), concluded that it would not dismiss the plaintiff's allegations, even those falling outside the relevant 300 day period, because the plaintiff had alleged a violation during the filing period and had pled that his discrimination was "of a continuing nature." Id. at 688. The Court permitted the plaintiff to "rely on a 'continuing violation theory' to defeat at this stage of the case defendant's argument that subject matter jurisdiction does not exist because plaintiff's claims were not timely filed." According to the Court, the plaintiff "should be allowed to develop pertinent facts supporting his continuing violation claim by way of pretrial discovery." Id. at 688.

In a similar case, Margaret Jensvold, a clinical psychiatrist, alleged, *inter alia*, that the defendant, National Institute of Mental Health, had 1) failed to mentor her or guide her in her research; 2) failed to apprise her of conferences and professional meetings; 3) prevented her from participating in important biological research; 4) assigned her a disproportionate number of routine tasks; and 5) ultimately, failed to extend her fellowship for a third year. Jensvold, 829 F. Supp. at 133. The Court permitted the plaintiff to go forward with certain of her allegations that would have otherwise been untimely because the plaintiff had adduced evidence showing that one or more of the alleged acts had occurred during the limitations period and the series of acts cited by the plaintiff appeared to result from her supervisor's ongoing animus toward her. Id. at 136.

Applying the reasoning of Sharafeldin and Jensvold, the Court should allow Dr. Rafi to proceed forward with his Allegations 1 through 12 as a continuing violation against the agency.   To begin with, Dr. Rafi brought one or more timely claims that he had been unlawfully denied employment by the agency. In fact, the agency has acknowledged, as it must, that "[t]he record shows no official notification dates of when the Complainant was notified of his nonselection for the NHGRI positions regarding allegations 8, 9, 10, 11 and 12." (ROI, Binder 2,

14

Tab 7). Moreover, Dr. Rafi has alleged that the pattern of discrimination treatment against him was orchestrated against him by NHGRI (NIH) as a whole, chiefly through Dr. Biesecker and Dr. Trent, both of whom were agency employees at the time. Clearly, Dr. Rafi satisfies the requirements for asserting a continuing violation against the agency.

## V. WHEREFORE, THE PLAINTIFF RESPECTFULLY REQUESTS THE COURT TO:

1. Conduct a **TRIAL BY JURY.**

2. Grant a permanent injection enjoining the defendant, its officers, agents, successors, employees, attorneys, assigned professional colleagues and other representatives and all those persons acting in concert with the defendant and at their discretion, from engaging in any employment policy or practice which discriminates against the plaintiff or is retaliatory against the plaintiff.

3. Retain jurisdiction over this action to assure compliance with the Order of this Court and with 42 U.S.C. 2000e-5 and 28 U.S.C. Section 1343(4) and 42 U.S.C. Section 1981, and the Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended.

4. Grant permission to modify and improve the text of this complaint soon after the Court appoints an attorney to represent the plaintiff.

## VI. WHEREFORE, THE PLAINTIFF SEEKS THE FOLLOWING REMEDIAL ACTION:

1. Grant compensatory damages for emotional distress and the value of being deprived of constitutional rights to enjoy the privileges of being of a citizen of this law abiding Nation.

2. Grant appropriate compensation for all the "irreversible damages" to his personal life, psyche, and for all the violations since 1993 to the present.

3. Grant appropriate back pay.

4. Order appointment to a GS-15-5 Clinical Cytogeneticist / Molecular Cytogeneticist position, since Dr. Rafi would presently be at this grade and step level, if he had not been wrongfully denied by NHGRI the GS-13 Biologist (Cytogeneticist) position in 1993, pursuant to announcement HG-93—0044.

5. Order the defendant be taxed with the cost of this action, including reimbursement in full of Dr. Rafi's attorney's fees.

I affirm under the penalties of perjury the foregoing

document is true and correct to the best of my

personal knowledge, information and belief.

*K. Syed Rafi*

**SYED K. RAFI, PHD**

4401-A, Connecticut Avenue, NW, B # 206

Washington, DC 20008-2322. (*Current Address*)

**This 22nd day of November 2002**

**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

Washington, D.C. 20201

AUG 28 2002

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

R. Douglas Taylor, Esq.
Jacobs, Jacobs & Jacobs, LLC
One Central Plaza/Suite 808
11300 Rockville Pike
Rockville, Maryland 20852

                           Re:    Syed K. Rafi
                                  Case No. NHGRI-EEO-98-0003
                                  EEOC Docket No. 120-A0-3795X

Dear Mr. Taylor:

This is to inform you of the Department's final decision on the subject Equal Employment Opportunity (EEO) complaint filed by Mr. Syed K. Rafi (hereafter referred to as the Complainant), against the Department of Health and Human Services, National Institutes of Health (NIH).

Your client claimed he was discriminated against on the bases of his race (Asian/Pacific-Islander), color (brown), national origin (East Indian), sex (male), age (49), religion (Islam) and prior EEO activity when:

1.    He was not hired as a volunteer scientist to work in the Laboratory for Genetic Disease Research on January 20, 1998; and

2.    He was not hired as a volunteer scientist to work in the Laboratory for Cancer Genetics Disease on January 23, 1998.

Your client requested a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ).  By Order dated July 18, 2002, Administrative Judge Laurence Gallagher issued his decision dated June 27, 2002.  The decision was received by this Office on July 23, 2002.

The transmittal letter informed us that a copy of the AJ's decision was mailed to you. Administrative Judge Gallagher ordered that the Department issue a final decision finding that you were not discriminated against as claimed.

You are hereby notified that the Department will fully adopt the decision of Administrative Judge Gallagher.

FILED

02 2356

NOV 29 2002



Page 2 - R. Douglas Taylor, Esq. Mr. Syed K. Rafi

## NOTICE OF EEOC APPEAL RIGHTS

If the Complainant is dissatisfied with this final order (final agency decision), within thirty (30) calendar days of receipt of this correspondence, s/he has the right to appeal to:

>   Equal Employment Opportunity Commission (EEOC)
>   Office of Federal Operations
>   PO Box 19848
>   Washington, DC 20036

The enclosed EEOC Form 573, **EEOC Notice of Appeal/Petition**, should be used to indicate what is being appealed.

If there is an attorney of record, the thirty (30) calendar day time-frame within which to appeal shall be calculated from the date of receipt of this correspondence by the attorney.

An appeal shall be deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC. If the Complainant does not file an appeal within the time limits indicated above, the appeal will be untimely and may be dismissed by the EEOC.

Any statement or brief the Complainant files in support of the appeal must be submitted to the OFO within thirty (30) calendar days of filing the Notice of Appeal/Petition. At the same time, the Complainant must furnish a copy of the appeal, or any statement or brief submitted to the OFO in support of the appeal, to the **Principal Deputy Assistant Secretary for Administration and Management.** In or attached to the appeal (or other submission) to the OFO, the Complainant must certify the date and method by which service was made on the agency.

Within thirty (30) calendar days of receipt of the notice of appeal, the agency must submit the complaint file to the OFO. The agency has thirty (30) calendar days from receipt of the statement or brief in support of the appeal, or sixty (60) calendar days if no statement or brief has been filed, to submit a brief in opposition to the appeal to the OFO, and simultaneously serve a copy of the opposition brief upon the Complainant.

The Complainant also has the right to file a civil action in an appropriate United States district court. If the Complainant chooses to file a civil action, s/he may do so:

- within ninety (90) calendar days of receipt of this final agency decision if no appeal has been filed;
- within ninety (90) calendar days after receipt of the EEOC's final decision on appeal;
- within one hundred eighty (180) calendar days from the date of filing a complaint if no appeal has been filed and no final action has been issued; or

Page 3 - R. Douglas Taylor, Esq. Mr. Syed K. Rafi

- within one hundred eighty (180) calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

The Complainant may file a civil action within two (2) years or, if the violation is willful, within three (3) years of the date of an alleged violation of the Equal Pay Act (EPA), regardless of whether s/he pursued any administrative complaint processing.

If the Complainant elects to file a civil action, s/he must name as the defendant, the **Honorable Tommy G. Thompson, Secretary of the Department of Health and Human Services**. Failure to name the Secretary may result in dismissal of the Complainant's lawsuit.

If the Complainant decides to file a civil action under Title VII or the Rehabilitation Act, and if s/he does not have or cannot afford the services of an attorney, s/he may request that the Court appoint an attorney to represent her/him, and that the Court permit her/him to file the action without payment of fees, costs, or other security. **The granting or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does **not** extend the Complainant's time in which to file a civil action. Both the request and the civil action **must be filed within ninety (90) calendar days** of the date s/he receives the final decision from the agency or the EEOC.

FOR THE DEPARTMENT:

Sincerely,

Evelyn M. White
Principal Deputy Assistant Secretary
for Administration and Management

cc: Syed K. Rafi, Complainant
Lawrence Self, Director, NIH, OEO
Linda Dorsey, Esq., Agency Representative
Laurence Gallagher, Esq., Administrative Judge, Baltimore District, EEOC