**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| SYED K. RAFI, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 02-2356 (JR) |
| | : |
| TOMMY G. THOMPSON, Secretary, | : |
| U.S. Department of Health & | : |
| Human Services, | : |
| | : |
| Defendant. | : |

**MEMORANDUM**

The narrow question the parties have briefed on defendant's renewed motion for summary judgment is whether the volunteer positions that plaintiff Dr. Syed Rafi sought at the National Human Genome Research Institute ("NHGRI") and National Institutes of Health ("NIH") from 1997 to 1998 qualify as federal "employment" covered by Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA") of 1967. As framed by my Memorandum Order of September 30, 2005, this question turns on the "nature and extent of the compensation that volunteer researchers receive." Mem. Order at 18. Having found that one benefit of a volunteer position alleged by plaintiff - a clear pathway to employment - might constitute sufficient compensation to bring NIH volunteers under Title VII, I permitted plaintiff to take discovery on the connection between volunteering at NIH and subsequent paid employment at NIH and elsewhere.

Although defendant now asserts that no such connection exists, plaintiff in his opposition points to numerous examples of NIH volunteers who subsequently moved on to full-time positions.[1] Moreover, plaintiff now raises a second tangible benefit of a volunteer position: an increased opportunity to participate in NIH's Interinstitute Medical Genetics program, which would have offered Dr. Rafi the medical genetics training necessary to fulfill the requirements of the American Board of Medical Genetics ("ABMG") in his fields of expertise, medical genetics and clinical cytogenetics. Because NIH was one of the few institutions that offered an accredited training program recognized by the ABMG, that opportunity might have provided the most practical approach to satisfying those requirements.[2] See

---

[1] The parties disagree on the percentage of special volunteers who were subsequently offered full-time employment. Although four of the fifty-three volunteers at NHGRI between 1996 and 1998 were converted to paid positions, it appears that all four received jobs for which Dr. Rafi was not eligible. It also appears, however, that he may have been eligible for paid positions offered to volunteers in subsequent years. Defendants' records show that at least twenty-three of the 400 people with volunteer positions between 1999 and 2005 were converted to paid positions. Moreover, plaintiff has introduced evidence that another sixteen conversions may have taken place in that time period. Looking at the facts from plaintiff's perspective, as I must for summary judgment purposes, it appears that 9.5% (43 of 453) of volunteers went on full-time employment -- a high enough conversion percentage to indicate that special volunteers do have a path to permanent employment.

[2] The fact that plaintiff was able to find alternate means of fulfilling this requirement in 2005 - seven years later - may limit the damages to which plaintiff may be entitled, but it does not establish, as defendants argue, a lack of prejudice by his non-selection as a special volunteer at NIH.

Haavistola v. Cmty Fire Co. of Rising Sun, 6 F.3d 211, 221 (4th Cir. 1993).  For these two reasons, plaintiff has made a plausible showing that the volunteer positions for which he applied would qualify as "employment" under Title VII and the ADEA.[3]

In the course of responding to that question, however, the briefs have illuminated another one.  Under the familiar framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), a plaintiff asserting employment discrimination must first establish a prima facie case by a preponderance of the evidence.  If the plaintiff establishes a prima facie case, the employer must then articulate a legitimate, nondiscriminatory reason for its actions.  The plaintiff must then demonstrate that the employer's stated reason was pretextual and that the true reason was discriminatory.  In order to establish his prima facie case of disparate treatment in hiring, Dr. Rafi must show, among other things, that he was qualified for the job.  See, e.g., Morgan v. Federal Home Loan Mortgage, 328 F.3d 647, 659 (D.C. Cir. 2003).  It appears from the briefs,

---

[3] Plaintiff also makes a footnote request for reconsideration of my footnote ruling that he failed to file a timely EEO complaint as to his rejection for a paid biologist position. Even if plaintiff reasonably believed that the blanket rejection letter he received from Dr. Trent in July 1997 did not cover his June 1997 application for a biologist position, plaintiff's request that I allow an arbitrary six-month buffer for him to await a response to his application before the 45-day EEO clock began to run is just that, arbitrary.  The request for reconsideration is denied.

however, that special volunteer positions at NIH may exist primarily as an administrative means for providing access to NIH facilities for graduate students or individuals, otherwise employed by other institutions, who bring their own funding. Because Dr. Rafi was neither a student nor someone with an independent source of funding, it is unclear whether he was eligible for a special volunteer position.[4] This question applies either to the qualification part of the prima facie case requirement, or to the legitimate nondiscriminatory piece of the McDonnell Douglas burden shifting analysis, or both. If Dr. Rafi was never eligible for a special volunteer position, he cannot establish his prima facie case. Moreover, even if special volunteers were not required to be students or to have their own funding, that Dr. Rafi was neither of those things would appear to be a legitimate, nondiscriminatory reason for not offering him a position. Either way, this question is dispositive. Rather than call on defendants to file yet another motion for summary judgment, it seems appropriate to call on the plaintiff to respond on this point. Such a response should be filed on or before December 15, 2006.

JAMES ROBERTSON
United States District Judge

---

[4] Nor is it clear whether Dr. Rafi's area of expertise, cytogenetics, was appropriate for the type of research conducted in the laboratories at which Dr. Rafi applied for a volunteer position. See Decl. of Leslie G. Biesecker at ¶4.